CHRISTINE HELLING, Respondent, v. THE UNITED ORDER OF HONOR, Appellant.

### St. Louis Court of Appeals, January 17, 1888.

1. PRACTICE, APPELLATE —NEW DEFENCES.—Defences which were not set up in the answer, and were not relied on at the trial, cannot be introduced in the appellate court.

2. ACCORD AND SATISFACTION—PART PAYMENT IN LIQUIDATION OF ENTIRE CLAIM.—A disputed claim may be finally settled by an agreed payment of a part in liquidation of the whole. But if the claim be undisputed, a part payment will not extinguish the remainder of the indebtedness, there being no consideration to validate such a discharge.

3. ———— HOW AVOIDED—BURDEN OF PROOF.—An accord and satisfaction, or compromise agreement, may be avoided upon proof that it was brought about by false representations. But the burden of proof is on the party objecting; and if there be no evidence that any of the representations made were untrue, then there is no question to be submitted to a jury.

4. PER THOMPSON, J., DISSENTING :—Where it appears that an agent representing one party in the making of a compromise agreement occupies the position of superior in a fiduciary relation to the other party, and the evidence tends to show any unfairness or undue influence on the part of such superior, whereby advantage is gained for the party represented by him, the agreement should be held as of no binding force against the other party thereto.

APPEAL from the St. Louis Circuit Court, HON. SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

Walter F. McEntire and Wm. C. & Jas. C. Jones, for the appellant : There was no evidence upon which the case could properly go to the jury, and defendant's instruction for non-suit should have been given. The certificate on which plaintiff's right of action is bottomed, distinctly provides that the sum of three thousand dollars shall be paid out of the mutual aid fund. Nothing in the petition alleges the existence of this fund, and no attempt is made on the trial of the case to prove its existence. *Smith v. Mut. Ben. Ass'n*, 24 Fed. Rep. 685; *Curtis v. Mut. Ben. Ass'n*, 48 Conn. 98; *Griffin v. Pratt*, 3 Conn. 513. The certificate provides that it shall only be in force and binding when signed by the member, otherwise it shall be null and void. The policy was never signed by the member. This is shown on its face. The respondent has, therefore, failed to show that any contract was ever entered into by appellant. *McCully v. Ins. Co.*, 18 W. Va. 782, 786; *Kohn v. Life Association*, 28 Fed. Rep. 705; *Misselhorn v. Life Association*, 30 Fed. Rep. 545; *Fire Ins. Co. v. Roessle*, 1 Gray [Mass.] 336; *Noyes v. Life Ins. Co.*, 1 Mo. App. 584; *Schwartz v. Ins. Co.*, 18 Minn. 448; *Life Association v. Kennedy*, 6 Bush, 450; *Marks v. Ins. Co.*, 117 Mass. 528; *Bertaud v. Ins. Co.*, 13 La. Rep. 539; May on Insurance, secs. 43, 44, 45; *Baldwin v. Ins. Co.*, 56 Mo. 151; *Badger v. Ins. Co.*, 103 Mass. 244; *Linn v. Burgoyne*, 13 B. Mon. 400; *Taylor v. Ins. Co.*, 9 How. 390; *Markey v. Ins. Co.*, 118 Mass. 178; 126 Mass. 158; *Heiman v. Ins. Co.*, 17 Minn. 153; *Ins. Co. v. Willetts*, 24 Mich. 268; Bliss on Insurance, p. 210, sec. 147; *Schwartz v. Ins. Co.*, 18 Minn. 448; *Schaffer v. Ins. Co.*, 89 Pa. St. 296. Is there any testimony in the case which shows, or even tends to show, in the slightest degree, that the representations made by the defendant, which brought about the compromise, were false, or that he knew them to be false? In order that the verdict of the jury may stand, it is necessary that there should be at least some evidence proving, or tending to prove, both of these facts. *Anstee v. Ober*, 26

Mo. App. 669; *Brown v. Wood*, 19 Mo. 475; *Chandler v. Fleeman*, 50 Mo. 239; *Dunn v. Dunnaker*, 87 Mo. 601; 1 Greenl. on Evid., sec. 442, and note; *Holbrook v. Mix*, 1 E. D. Smith, 154. The plaintiff has twice failed to establish a cause of action. All the evidence of which the case is susceptible is before the court. This evidence clearly shows that plaintiff has no standing in court, and this tribunal should enter an order dismissing the case.

I. C. TERRY, for the respondent: Payment of part of a debt in satisfaction of the whole debt is no liquidation, and an agreement to receive it is *nudum pactum. Bliss v. Schwartz*, 12 U. S. [L. R.] 592; *Howard v. Norton*, 12 U. S. [L. R.] 656. An agreement to settle an existing debt will fail, for want of consideration, unless some advantage or benefit accrued to the creditor, or detriment to the debtor other than what springs out of the original contract. *Molyneaux v. Collor*, 2 L. R. [O. S.] 379; *Webb v. Stuart*, 11 L. R. [U. S.] 529; *Reilly v. Kershaw*, 52 Mo. 226; *Mullin v. Morton*, 23 Mo. App. 539; 2 Parsons on Contracts, 682. Whenever fraud is the matter in issue, any unusual clause in the instrument, any unusual method of transacting the business, apparently done to give the transaction an air of honesty, is, itself, a badge of fraud. *Baldwin v. Whitcomb*, 71 Mo. 651; *Houts v. Shepard*, 79 Mo. 144. A wilful statement, even though made in ignorance of the truth, is the same as the statement of a known falsehood. *Delaney v. Rogers*, 64 Mo. 200; *Drum v. White*, 63 Mo. 185; *Smith v. Burchard*, 2 Mo. App. 494; *Baker v. Scudder*, 56 Mo. 272; *Pomeroy v. Benton*, 57 Mo. 548; *Custer v. Ober*, 26 Mo. App. 669; *Dunn v. White*, 63 Mo. 181; *Caldwell v. Haney*, 76 Mo. 254; *Bank v. Crandall*, 87 Mo. 208. The certificate provides "that the member is entitled to a benefit of three thousand dollars, which shall be paid in case of death." The condition is absolute, the payment is absolute. The designation of a certain fund out of

which it shall be paid is to control the officers of the corporation, and is for their benefit. *Neosho v. Ass'n*, 15 N. W. Rep. 683 ; *Bertaud v. Ass'n*, 4 Mich. 424.

ROMBAUER, J., delivered the opinion of the court.

The plaintiff recovered judgment for fifteen hundred dollars against the defendant, being the balance claimed by her as the beneficiary named in the following certificate :

"No. 6,996.                              $3,000.00

":"Supreme Lodge :"       United Order of Honor.
"Seal.           :
                                Mutual Aid Fund Certificate.

"This certifies, that George Kroenlein is a member of the United Order of Honor, and entitled to all the rights and privileges of membership, and a benefit not exceeding $3,000 from the mutual aid fund of said order, which shall, in case of total disability, be paid to self, or, in case of death, to Mrs. Christine Helling (mother), in the manner and subject to the conditions set forth in the laws governing said mutual aid fund, and in the application for membership.

"This certificate to be in force and binding when signed by the member, with the signature of the president and recording secretary, and the seal of subordinate lodge affixed, so long as said member shall comply with the requirements of the constitution, laws, and regulations adopted for the government of the order ; otherwise to be null and void.

"In witness whereof we have hereunto attached our signatures and affixed the seal of the Supreme Lodge, United Order of Honor, this 30th day of September, A. D., 1885.

"Attest :

"Subordinate   :           THOMAS E. BOYD,
"Lodge Seal.   :               Supreme President.
                            ERNEST DUDEN,
                                Supreme Secretary.

"I hereby accept this certificate on the conditions named therein :

"...................................

"Signature of Member.

"Witnessed and delivered in our presence:

"A. H. GILSINN, President.

"R. H. SIMPSON,

"Recording Secretary of Triumph Lodge, No. 136."

The petition states that the assured, George Kroenlein, died November 16, 1885, being a member in good standing and having complied with all the rules and regulations of the order; that defendant did pay to plaintiff fifteen hundred dollars, on account of said certificate, on or about May 1, 1886, but refuses to pay the balance, wherefore she sues.

The answer admits that the defendant is a benevolent organization, and that it issued to George Kroenlein a certain certificate numbered and dated as alleged in plaintiff's petition; denies that said certificate was ever signed by the subordinate lodge officers, and denies each and every other allegation in the petition contained. For further answer, defendant alleged that, shortly after the death of Kroenlein, defendant's officers were placed in possession of certain information which they had every reason to believe, and did believe, and that said information was to the effect that said Kroenlein had made false and fraudulent representations in the application for said certificate; that, relying upon and confiding in the truth of said information, defendant maintained that it was in no way liable to plaintiff on account of said certificate; that, after a conference between plaintiff and defendant's president, it was agreed that in order to avoid litigation and the costs and expenses attendant thereon, the defendant would pay plaintiff fifteen hundred dollars, and that plaintiff would accept said sum in full satisfaction of her claim against defendant; that, in pursuance of said agreement, defendant did, on the twenty-second day of April, 1886, pay plaintiff said sum of fifteen hundred

dollars in full payment and satisfaction of her claim against defendant.

Plaintiff's reply to defendant's answer states that plaintiff has no information on which to base a belief as to whether defendant's officers were placed in possession of certain information which they believed, to the effect that the said Kroenlein had made false and fraudulent representations in his application for said certificate, and denies that defendant relied on said information ; admits that defendant denied liability to plaintiff in the sum mentioned in said certificate ; admits that, after a conference between plaintiff and defendant, it was agreed that plaintiff should accept fifteen hundred dollars, in full satisfaction of her claim against defendant, on account of said certificate, and that, in pursuance of said agreement, defendant did, on the twenty-second day of April, 1886, pay to plaintiff the sum of fifteen hundred dollars, and that the same was accepted by plaintiff in full of said claim.

"Further replying, plaintiff alleges, that, on April 26, 1886, defendant's president, one Wishard, falsely and fraudulently represented that no assessment had been paid into the treasury of defendant to pay said claim ; that he also represented to plaintiff that said Kroenlein's application for said certificate was irregular and incomplete, so as to render the same void ; that the medical examiner's report in said application was not properly filled out and signed ; that said Kroenlein made false statements in the medical examiner's certificate and application ; all of which and other representations made by said Wishard at the time were false, and known by said Wishard to be so ; that said Wishard, through one Nidelet, made certain other false representations upon which plaintiff relied, and which were not known to her to be false ; that, by artifice, deception, and other cheats, and by menaces and violent speech and manner frightening plaintiff and taking advantage of her ignorance and trust, defendant's president prevailed on plaintiff to accept said sum of fifteen

hundred dollars in full satisfaction of her claim ; that said satisfaction and discharge was effected by the means stated, and was and is void, and there was no consideration therefor."

It has become necessary to set out the answer and reply in full because defendant's main contention upon this appeal is, that, under the pleadings and evidence, the court should have instructed the jury to find for the defendant at the close of plaintiff's case, as it was requested, but refused to do.

The defendant's first contention is, that there was no evidence that there was a mutual aid fund out of which these three thousand dollars could be paid, and that the certificate offered in evidence never became binding on defendant because not signed by the member, George Kroenlein. It suffices to say in reply that the answer sets up no such defences, nor is there anything in the record to show that defendant relied upon them or either of them. When the certificate was offered in evidence by plaintiff it was admitted and read without objection, as the record recites, and when the plaintiff offered to prove that the assured was a member of the order at the time of his death, that fact was expressly admitted by counsel for defendant. The entire record shows that the only defence relied on by the defendant at the trial was the accord and satisfaction set up in its answer. The defendant cannot be permitted to try the case on one theory in the court below and another theory here. *Whetstone v. Shaw*, 70 Mo. 579, 580 ; *Nance v. Metcalf*, 19 Mo. App. 183.

The defendant's next contention is, that the plaintiff failed to introduce any evidence tending to show that the accord and satisfaction of the claim were brought about by any fraudulent conduct on part of defendant, or its servants or agents. The answer sets up an accord and satisfaction of the claim. The reply admits the accord and satisfaction. It states that, on "the twenty-second day of April, 1886, defendant paid to plaintiff

said fifteen hundred dollars, and plaintiff did then and there accept the same in full satisfaction of said claim."

The reply then sets up a number of false and fraudulent representations made by Wishard and Nidelet, officers of the defendant, by which it is claimed the plaintiff was induced to accept fifteen hundred dollars, in satisfaction of her claim.

Wishard was called as a witness for the plaintiff and his entire testimony is, in substance, as follows:

"I live at Indianapolis. I am an attorney and also supreme president of the United Order of Honor. It is a part of the duty of the latter office to adjust such matters as these. The proof of Kroenlein's death was received at Indianapolis and the board approved the claim. The day after the claim was allowed remonstrances against its payment were received from members of the order here, and then the order approving the claim was set aside, and I was asked to come here and see if I could adjust the matter. I came over, and with Dr. Nidelet, went to see Mrs. Helling. The information which I had, that George Kroenlein had made false and fraudulent representations in his certificate, consisted in statements received in correspondence at Indianapolis. Personally I knew nothing of the matter. This correspondence was furnished me by the board of trustees. I told Mrs. Helling that the board of trustees had refused to pay the claim; that objections had been made and some very doubtful questions presented. Kroenlein was initiated into the order on the twenty-first day of September and died on the tenth of November. Now these remonstrances on which I acted were to the effect that Kroenlein had been drinking very hard, and that his death was caused by the excessive use of liquor; also that Kroenlein had been attending bar in a saloon connected with a grocery-store, together with his duties as grocery clerk, and there is a law of the order providing that a person engaged in the sale of liquors shall be ineligible to membership. I told her that this was the information that the board had, and that it was also

represented that she had been very solicitous to get her son to join the order ; that Kroenlein had been examined by the family physician ; that that examination was hardly fair and right, and that he had only been in the order a short time before he died, less than thirty days.    There was also some statement about the examination not being correct on its face by Dr. Nidelet.    In one place on the application there appears the following question in reference to the applicant's use of morphine, opium, tobacco, and alcoholic stimulants :    ' What has been your habit in respect to either through life.'    His answer was :    ' Temperate in every respect.'    I asked Mrs. Helling if the answer was true.    She said his answer was not.    I didn't know whether these statements made to the board were true or false.    I went there feeling that they were true.    My reason for refusing to pay in full was that I relied upon the information I had, and Mrs. Helling admitted, while I was there, that that information was true.

"CROSS-EXAMINATION.—I have no knowledge of the truth or falsity of the information which I received from the board of trustees.    I did not tell Mrs. Helling that I knew those statements to be true.    At the time I received this information, and at the time I made the settlement with Mrs. Helling, I believed the information to be true."

The defendant contends that, as Wishard was called as a witness for plaintiff, the plaintiff was bound by his testimony and could not contradict it.    Such, however, is not the law.    A party calling a witness cannot impeach him by showing that his reputation for truth is bad ; or by showing that he made contradictory statements out of court.    *Dunn v. Dunnaker*, 87 Mo. 600.    But where he testifies contrary to expectations, the party calling him is not precluded from proving the facts by another witness, although in so doing he may show that the witness first called was guilty of perjury.    *Brown v. Wood*, 19 Mo. 475.    But a careful examination of the record in this case discloses the fact that Wishard

was not contradicted in any material part of his testimony in plaintiff's case in chief, and even in rebuttal the only attempt to contradict him was as to whether the plaintiff admitted to him the intemperate habits of her son.

On the other hand, there was a direct contradiction between the testimony of the plaintiff's son and that of her main witness, one Anna Farnholz, who were both called in to assist in the settlement. The former testifies that the receipt executed by the plaintiff was never read to her, the latter that it was read by Wishard in her presence and hearing, and in the presence and hearing of plaintiff. As it appears that the conversation during the negotiation for a settlement was carried on in the English language, as there is no pretence that the plaintiff did not understand the English language, this receipt, its execution being admitted, is necessarily binding upon her unless such execution was brought about by fraud or mistake.

The receipt is in the following words :

"St. Louis, Mo., April 22, 1886.

" Whereas, heretofore George Kroenlein was, upon September 21, 1885, admitted as a member of Triumph Lodge, No. 136, United Order of Honor, at St. Louis, Mo., and as such member became or claimed to be a member of the fourth division of the mutual aid benefit, and whereas the said George Kroenlein provided in his application for membership in said order that at his death the amount due on his beneficial certificate should be paid to the undersigned, his mother, and whereas, upon November 17, 1885, said George Kroenlein died, and as there was great question as to the eligibility of said George Kroenlein to become a member of said order, by reason of his physical condition and business, and the United Order of Honor refuses to pay said benefit, I now agree and do hereby accept the sum of fifteen hundred dollars ($1,500.00), the receipt of which is hereby acknowledged, and do hereby compromise said claim and accept said sum in full settlement thereof,

and do hereby release said order from any further liability thereon.

" Witness:                              CHRISTINE HELLING.

    " JAMES C. NIDELET,
    " ANNIE FAHRENHOLZ,
    " W. KROENLEIN."

This being all the evidence bearing upon the matter set up in avoidance of the accord and satisfaction, we can find no substantial evidence in the record on which that question could be submitted to the jury. The court did, upon its own motion, subsequently instruct the jury as follows:

"The court instructs you that the papers executed by plaintiff to defendant, of date April 22, 1886 (as read in evidence), constitute a valid compromise or settlement of the demand here sued upon, unless you find and believe from the evidence that said settlement, on the part of the plaintiff, was induced by any representation of Wishard (such as is described in instruction numbered two), which was knowingly false when made by him; and unless you so find from the evidence your verdict should be for defendant."

"The burden of proof is on the plaintiff to show to your satisfaction, by a preponderance of evidence, all the facts necessary to a verdict in her favor under the law as declared in these instructions; and unless you find she has so established all of such facts, your verdict should be for the defendant."

These instructions unquestionably state a correct proposition of law, and had the jury obeyed them, would have resulted in a verdict for defendant. But as the burden of proof was upon the plaintiff to show that the compromise was brought about by fraud, and as the plaintiff failed to adduce substantial evidence to that effect, there was, under the pleadings, no question to be submitted to a jury.

The plaintiff contends that, under the pleadings and evidence, she was entitled to judgment as a matter of

law, and relies upon the familiar principle that payment of a part of a debt in satisfaction of the whole is no liquidation; and an agreement to receive it is supported by no consideration, citing in support *Reilly v. Kershaw*, 52 Mo. 226, and *Mullen v. Morten*, 23 Mo. App. 539. The plaintiff, however, entirely overlooks the qualification of the proposition that the debt referred to is an undisputed debt. Where the very gist of the controversy is whether the defendant owes anything at all, it would be the height of folly to hold that, by paying upon a compromise, part of what the plaintiff claimed, the defendant at once concedes that the entire claim of plaintiff is just.

It results from the foregoing considerations that the judgment must be reversed. Reversed and remanded. Judge Lewis concurs. Judge Thompson dissents.

Thompson, J., delivered a dissenting opinion.

These mutual benefit societies have taken the place of the regular life insurance companies to such a wide extent, and especially among the poorer classes, that I regard the question under what circumstances compromises of death-claims between them and their beneficiaries will be upheld, as an important one. I place my dissent from the conclusions of my associates upon the following propositions : (1) That Mr. Wishard and Dr. Nidelet occupied toward the plaintiff the position of *superiors* in a *fiduciary relation;* (2) that the rule which avoids benefits acquired through the influence of persons occupying such a position toward the donor or grantor of the benefit is not exclusively a rule of equity—that is, that, under our blended system, whatever would avoid this compromise in an equitable proceeding will avoid it in a legal proceeding; (3) that the rule applies as well to *compromises* obtained by such superiors by misrepresentations or undue influence, as to *gifts* or *benefits* obtained in such a way.

Upon the first question, I do not see that there is any substantial room for doubt, unless the view which

I understand my associates to entertain is the correct one, that, the fiduciary relation which existed between the plaintiff and the defendant was dissolved by the death of the assured; but as this conclusion involves the solecism that a fiduciary relation existed so long as he had any money to pay the defendant, but ceased as soon as the defendant had something to pay to its beneficiary, it is a proposition to which I cannot assent.

Upon the second ground, I should have more doubt were it not that the courts are in the constant practice of allowing juries to ignore, upon slight grounds, compromises of death-claims and other damage claims for personal injuries which are procured by railway companies through their counsel and claim agents, from the widows and parents of their employes who have been killed or injured by their negligence in the course of their employment. In these cases no fiduciary relation subsists between the parties to the compromise agreement; but it is the weak dealing with the strong; the skillful dealing with the ignorant; the wealthy dealing with the hungry; and courts and juries have found the means of setting them aside in very numerous cases in actions at law.

What is fraud in one case may be innocent in another. What is innocent and permissible, where parties stand on an equal footing and deal with each other at arm's length, may be fraud where they stand toward each other in a fiduciary relation. Where such a relation exists any distinction between undue influence and fraud—I speak of this with reference to the pleadings—is a mere juggle about words, because undue influence in such circumstances is fraud.

It is to be borne in mind that it is quite unnecessary, where a confidential relation exists, that the superior in that relation who has obtained the benefit, should have obtained it for himself. It has been held, in two cases, enough that he, being a clergyman, obtained it for the church of which he was a member. *Ford*

*v. Hennessey*, 70 Mo. 580 ; *Caspari v. First German Church*, 12 Mo. App. 293 ; s. c., affirmed, 82 Mo. 650. So, in this case, it is enough if these officers of a benevolent society, of which the plaintiff, in addition to being a member, was also a beneficiary, in respect of the benefit certificate of her son, obtained this compromise from her for the society, if they obtained it by means which the law will not uphold. If they occupied this relation toward the plaintiff, before advising her to assent to this compromise, they owed to her a two-fold duty : (1) That of the most scrupulous openness and fairness, in the representations made, both as to matters of fact, and matters of law,—and especially as to matters of law, of which she was profoundly ignorant ; (2) that of seeing, that before assenting to the compromise, she had independent and *competent* advice. 1 Story Eq. Jur., sec. 312 ; *Ford v. Hennessey*, 70 Mo. 580, 590 ; *Caspari v. First German Church*, 12 Mo. App. 315 ; s. c., affirmed, 82 Mo. 650 ; and other cases there cited.

What, then, are the facts? They were the highest officers in a social and benevolent order of which she was also a member,—Mr. Wishard being the highest officer of the entire order and Dr. Nidelet being the highest officer in the state of Missouri. They had presumably been placed in their respective positions of honor and trust by the organization acting through their lodges. She had a right to expect of them, that they would deal with her in the utmost good faith.

Now, to my mind the evidence shows that they did not deal with her in good faith. In the first place, before Mr. Wishard attempted to persuade her into this compromise, good faith on his part required that he should ascertain whether there were any reasonable and just grounds for contesting her claim. His own testimony shows that he made no personal investigation of this matter at all. He simply came to St. Louis for the purpose of persuading her into this compromise,

because he had been requested to do so by the governing board at Indianapolis; and they had made the request because complaints had come to them about the claim from members of the order in St. Louis. But no steps were taken to ascertain the justness of these complaints before persuading her to give up one-half of what she was entitled to under the contract between her deceased son and the order.

What did they tell her? According to Wishard's own testimony, he told her in substance that there was a very *doubtful question* hanging over her claim, impressing her with the belief that it was very doubtful whether she could recover upon it. Although this was a statement of a conclusion, which would not be a ground for an action of deceit as between persons who do not stand in a fiduciary relation and who deal with each other at arm's length,—it was incumbent upon him, before stating it to her, to satisfy his mind fairly whether it was true or not true. His own evidence shows that he represented it to her without making such an investigation as satisfied him that it was true.. It was, therefore, bad faith in him, occupying as he did a position which demanded of him perfect good faith and truth in his dealings with her, to represent it to her.

Then let us take up the part of Dr. Nidelet in this transaction, as shown by his own testimony. He told her in substance that there was a *flaw in the doctor's certificate;* and, when questioned on the witness-stand as to what the flaw was, he stated that that certificate showed that the pulse of the deceased was more rapid when sitting down than when standing up. But who was the doctor who made the certificate? He was the examining physician of the society, and not the agent of the deceased, or of Mrs. Helling. His statement was openly made. The governing board of the society had it under their eyes when they accepted the risk, and the fact of its existence does not tend in the slightest degree to impair the validity of the plaintiff's claim.

This is the case as shown by the testimony of these two officers of the order themselves. The discrepancy between their testimony and that of the plaintiff is, that, according to the plaintiff's testimony, it was Wishard, and not Dr. Nidelet, who represented to her that there was a flaw in the doctor's certificate.

Now let us group the evidence. Here was an ignorant old woman recently bereft of her son, who had died a member of a benevolent organization of which she was also a member. Two of the highest officers of the organization call upon her at her residence, without any previous notice of their visit or of the purpose of it. She is even frightened by their visit when they call. One of them is a lawyer of seven years' practice, and the other is a physician of thirty years' practice. The lawyer is astute enough to tell her to call in some friend ; and she calls in whom ? Another *woman*, also a member of the order, and her son who was—not a lawyer competent to advise her, but a *butcher*. Wishard had to return to Indianapolis by the evening train, and argues with her for two hours, pressing her to a conclusion ; telling her, as we may reasonably infer from all the testimony, that unless she took what he offered her she would get nothing. Meantime, Nidelet presses upon her the statement that there is a flaw in the doctor's certificate,—a statement which, above anything else, would have a tendency to frighten an ignorant person into surrendering her rights. Under these circumstances, after consulting with this woman and with this butcher, she finally yielded and took fifteen hundred dollars, one-half of the amount secured by her certificate.

This is the state of facts on which this court has held that there was no evidence of fraud in securing this compromise to go to the jury. I do not agree that the so-called "scintilla doctrine" is the law in this state, but I not only think that there was evidence of fraud, but I think that the jury decided it rightly, and I do not think that any jury could be assembled that would decide it the other way. A chancellor, upon this evi-

dence, would not set aside such a settlement upon a bill in equity, and a jury can always be trusted to say upon such evidence that justice has not been done.

The question whether there was a consideration is one thing, and the question whether fraud supervened is another, and an entirely different thing. I do not dispute that there was here such a consideration, as, in the absence of fraud, would support the compromise in a court of law. But the question of consideration lies entirely outside of the boundaries of the question of fraud. Wishard's own testimony convinces me that when he said in the witness-chair he knew that he had acted unfairly in the transaction. I would not go so far as to say Nidelet knew that he was also acting unfairly, but he seems to have been willing to go there and countenance the quest of Wishard, and to frighten this old woman with a statement of a fact which had not the slightest relevancy to the question of her right to recover.

I am of opinion that the decision of the court rendered in this case is contrary to *Ford v. Hennessey*, 70 Mo. 580, and to *Caspari v. First German Church*, 82 Mo. 649, and that the case ought to be certified to the Supreme Court.